1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JACQUELINE CURRY,

11        Plaintiff,                    No. CIV. S-10-2592 JAM EFB

12        vs.

13   KAISER FOUNDATION HOSPITALS;
     CNA (CALIFORNIA NURSES
14   ASSOCIATION),

15        Defendants.                   <u>FINDINGS AND RECOMMENDATIONS</u>

16   _____/

17        This case is before the undersigned pursuant to Eastern District of California Local Rule

18   302(c)(21).  *See* 28 U.S.C. § 636(b)(1).  Pending before the undersigned are defendant California

19   Nurses Association's ("CNA") motion for summary judgment, Dckt. No. 28, and defendant The

20   Permanente Medical Group, Inc.'s ("TPMG") motion to dismiss and motion for a more definite

21   statement, Dckt. No. 12.[1]  For the reasons stated herein, the undersigned recommends that

22   CNA's motion for summary judgment be granted, that TPMG's motion to dismiss be granted

23   with leave to amend, and that TPMG's motion for a more definite statement be denied.

24   *////*

25   _____

26        [1] Plaintiff's first amended complaint erroneously named defendant TPMG as Kaiser
     Foundation Hospitals.  Dckt. No. 12-1 at 1.

I.      BACKGROUND

On September 23, 2010, plaintiff filed the original complaint in this case alleging wrongful conduct by TPMG, plaintiff's former employer, and by CNA, the collective bargaining representative for nurses employed by TPMG, based on plaintiff's termination as a charge nurse for TPMG.  Dckt. No. 1, Compl.  Plaintiff subsequently filed a first amended complaint ("FAC") on October 15, 2010.  Dckt. No. 10.[2]  Although the FAC is separated into three "Cause of Action" sections, plaintiff's allegations within each section are unclear and disjointed.  Taking into consideration the liberal pleading standard afforded to pro se litigants, the undersigned construes plaintiff's FAC as alleging the following: (1) a claim for breach of the duty of fair representation against CNA; (2) a negligence claim against CNA; (3) a claim for wrongful termination in breach of the collective bargaining agreement against TPMG; (4) a claim for breach of the implied covenant of good faith and fair dealing against TPMG; (5) a claim for wrongful termination in violation of public policy against TPMG; (6) a claim for breach of contract against TPMG based on TPMG's math testing policy for nurses; and (7) a racial discrimination claim against TPMG.

On October 22, 2010, defendant CNA filed an answer to plaintiff's complaint, Dckt. No. 11, and now seeks summary judgment.  CNA's Mot. for Summ. J. ("CNA's MSJ"), Dckt. No. 28.  Defendant TPMG moves to dismiss plaintiff's complaint for failure to state claim, Fed. R. Civ. P. 12(b)(6), and in the alternative, moves for a more definite statement.  Dckt. No. 12.

////

////

---

[2] Plaintiff's FAC is identical to her original complaint except in two ways.  First, plaintiff filed the FAC in an attempt to correctly name defendant TPMG.  As noted above, the FAC still erroneously named TPMG as Kaiser Foundation Hospitals.  Second, plaintiff neglected to include with the FAC the documents she attached to her original complaint.  Plaintiff's FAC is the operative complaint herein.  However, for plaintiff's benefit, the undersigned utilized both the FAC and the documents submitted with the original complaint.  This did not affect the ultimate finding that CNA is entitled to summary judgment.  Citations to the original complaint are indicated as "Compl." and citations to the first amended complaint are indicated as "FAC".

II.     <u>DEFENDANT CNA'S MOTION FOR SUMMARY JUDGMENT</u>

     A.     <u>Summary Judgment Standard</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

Summary judgment avoids unnecessary trials in cases with no genuinely disputed material facts. *See N. W. Motorcycle Ass'n v. U .S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over material facts; e.g., issues that can only be determined through presentation of testimony at trial such as the credibility of conflicting testimony over facts that make a difference in the outcome. *Celotex*, 477 U.S. at 323.

If the moving party meets its initial responsibility, the opposing party must establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To overcome summary judgment, the opposing party must demonstrate a factual dispute that is both material, i.e. it affects the outcome of the claim under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Wool v. Tandem*

1   *Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).  In attempting to establish the existence of

2   a factual dispute that is genuine, the opposing party may not rely upon the allegations or denials

3   of its pleadings but is required to tender evidence of specific facts in the form of affidavits,

4   and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed.

5   R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11.

6        In resolving a summary judgment motion, the court examines the pleadings, depositions,

7   answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R.

8   Civ. P. 56(c).  The evidence of the opposing party is to be believed.  *See Anderson*, 477 U.S. at

9   255.  All reasonable inferences that may be drawn from the facts placed before the court must be

10  drawn in favor of the opposing party.  *See Matsushita*, 475 U.S. at 587.  Nevertheless, inferences

11  are not drawn out of the air, and it is the opposing party's obligation to produce a factual

12  predicate from which the inference may be drawn.  *See Richards v. Nielsen Freight Lines*, 602 F.

13  Supp. 1224, 1244-45 (E.D. Cal.1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to

14  demonstrate a genuine issue, the opposing party "must do more than simply show that there is

15  some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could

16  not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for

17  trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

18        B.    Undisputed Facts[3]

19        In 2002, plaintiff accepted a position as a registered nurse with TPMG.  Compl. at 19, Ex.

20  _____

21        [3] Plaintiff neither admitted nor denied the facts set forth by CNA in its Statement of
    Undisputed Facts, as required by Local Rule 260(b).  Although a verified complaint based on

22  personal knowledge setting forth specific facts admissible in evidence is treated as an opposing
    affidavit under Rule 56, *Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995), and a verified

23  pleading based on personal knowledge in opposition to a summary judgment motion which sets
    forth facts that would be admissible in evidence may also function as an affidavit, *Johnson v.*

24  *Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir.), *cert. denied*, 525 U.S. 840 (1998), here, neither
    plaintiff's FAC nor her opposition to CNA's motion for summary judgment is verified or signed

25  under penalty of perjury.  Therefore, the court accepts CNA's version of the facts except where
    contradicted by the evidence plaintiff submitted with her original complaint and with her

26  opposition to the summary judgment motion.  Nonetheless, even if plaintiff's FAC or opposition
    had been verified, summary judgment must still be granted for the reasons discussed below.

4

D[4]; *see also* CNA's Stmt. of Undisp. Facts ("SUF"), Dckt. No. 26, ¶ 1.[5]  Defendant CNA is the exclusive collective bargaining representative for nurses employed by TPMG.  CNA's MSJ, Henke Decl., Dckt. No. 25, ¶ 2.  Plaintiff was a member of the CNA bargaining unit during her employment with TPMG.  SUF ¶ 3.  Maryanne Henke, a CNA labor representative, was responsible for representing plaintiff in all matters, including processing grievances.  Henke Decl. ¶ 1.

In 2008, TPMG enacted the "Medication Math Testing for RNs and LVNs" policy ("math policy").  Compl. at 17-18, Ex. C; Henke Decl., Ex. 13.  The math policy requires those employees who administer or verify medications to complete and pass a math test, with a score of at least 90 percent, annually.  *Id.* at 17.  A person who fails to achieve a passing score after three attempts will be terminated.  *Id.*  The math policy is a TPMG policy and is not a part of the collective bargaining agreement between CNA and TPMG.  CNA Reply, Dckt. No. 30, at 6; Henke Decl., Exs. 1, 13; *see also* Dckt. No. 21 at 2.

Plaintiff attempted the math test on December 8, 2008 and December 15, 2008, and on both occasions failed to achieve a passing score.  SUF ¶¶ 4-5.  On December 16, 2008, plaintiff e-mailed CNA labor representative Maryanne Henke stating that the math testing was discriminatory.  Pl.'s Resp. to CNA's Mot. for Summ. J. ("Pl.'s Resp."), Dckt. No. 29, Ex. E at 1.  On December 22, 2008, plaintiff attempted the math test for a third time, again failing to achieve a passing score.  SUF ¶ 6.  On December 24, 2008, TPMG terminated plaintiff's employment, citing her failure "in passing the math tests per the 'Medication Math Tests for RNS and LVNS' policy" as the reason for termination.  SUF ¶ 7; *see also* Henke Decl., Ex. 4.

////

---

[4] Plaintiff has not labeled the documents attached to her original complaint.  To avoid confusion, the undersigned refers to page numbers as assigned by the CM/ECF system.

[5] All citations to the Statement of Undisputed Facts herein incorporate by reference those citations stated in the SUF in support of each undisputed fact.

1    On December 28, 2008, Henke, on behalf of plaintiff, initiated the internal union

2    grievance procedure at Step 2, alleging that TPMG terminated plaintiff without just cause in

3    violation of paragraph 4021 of the collective bargaining agreement.  SUF ¶ 8.  TPMG denied the

4    grievance on March 3, 2009.  SUF ¶ 9.  Henke pursued the matter by filing a Step 3 grievance.

5    SUF ¶ 10.  On April 22, 2009, this grievance was also denied.  SUF ¶ 11.  That same day, Henke

6    informed plaintiff of the Step 3 grievance denial.  Henke Decl., Ex. 11 at 1.  Plaintiff responded

7    that she had "no problem taking the exam again" now that she had "utilized the on line

8    courses."  *Id*.

9    Following TPMG's denial of the Step 3 grievance, Henke negotiated an agreement with

10   TPMG whereby TPMG agreed to provide plaintiff with a tutor to prepare for the math test, to

11   allow plaintiff an opportunity to re-take the math test with the tutor as the proctor, and to

12   negotiate terms for plaintiff's return to TPMG if plaintiff passed the test.  SUF ¶ 12.  On April

13   27, 2009, Henke informed plaintiff of the agreement.  Henke Decl., Ex. 15 at 3.  On May 1,

14   2009, plaintiff responded that she was ready to re-take the math test.  *Id.* at 2-3; *see also* Henke

15   Decl. ¶ 14.

16   On May 19, 2009, Henke informed plaintiff that a tutor was available and provided the

17   tutor's contact information.  SUF ¶ 13.  That same day, plaintiff responded again that she looked

18   forward to re-taking the math test.  SUF ¶ 14.  Henke then unsuccessfully attempted to contact

19   plaintiff by telephone on May 29, 2009, June 15, 2009, and June 22, 2009.  SUF ¶¶ 16, 17.  On

20   June 22, 2009, Henke also contacted plaintiff by e-mail to inquire why plaintiff had not yet re-

21   taken the math test.  SUF ¶ 18.  Plaintiff did not respond.  SUF ¶ 19.

22   On June 30, 2009, Henke informed plaintiff by e-mail and letter that unless plaintiff

23   contacted CNA by July 13, 2009, CNA would no longer pursue plaintiff's claim and would

24   consider the grievance closed.  SUF ¶¶ 20, 22.  CNA received no response from plaintiff and, as

25   a result, on August 18, 2009, CNA closed plaintiff's grievance.  SUF ¶¶ 21, 23-24.  Henke

26   informed plaintiff by e-email that CNA considered plaintiff's grievance closed.  SUF ¶ 24.

1   At some point after she was terminated, plaintiff filed a discrimination complaint with the

2   California Department of Fair Employment and Housing ("DFEH") against TPMG.[6]  Compl. at

3   14, Ex. B.  DFEH informed plaintiff that her complaint was considered closed as of June 25,

4   2010.  *Id.*  On August 5, 2010, the United States Equal Employment Opportunity Commission

5   ("EEOC") adopted DFEH's findings and issued plaintiff a notice of her right to sue.  Compl at

6   16, Ex. A.

7       C.      Analysis

8              1.  Breach of the Duty of Fair Representation Claim Against CNA

9   Plaintiff's FAC alleges a breach of the duty of fair representation by CNA for its bad

10  faith failure to submit plaintiff's grievance to arbitration.  FAC at 4.  Additionally, plaintiff

11  argues that Henke, plaintiff's CNA representative, "refused to provide factual information that

12  would have been favorable toward the plaintiff's case" during meetings with TPMG and that

13  Henke refused to "represent plaintiff in a fair manner."  FAC at 4, 8.

14  Defendant CNA moves for summary judgment on plaintiff's claim for breach of the duty

15  of fair representation, asserting that the claim is barred by the statute of limitations and that

16  plaintiff cannot establish the elements of the claim.[7]  CNA's MSJ at 5-7.

17  Plaintiff opposes the motion, arguing her complaint is timely.  Pl.'s Resp. to CNA's Mot.

18  for Summ. J. ("Pl.'s Resp."), Dckt. No. 29, at 2.  Plaintiff contends that she filed a complaint

19

20      [6] Attached to plaintiff's original complaint is a "Notice of Case Closure" from DFEH,
Compl. at 14, Ex. B, and a "Dismissal and Notice of Rights" from EEOC, Compl. at 16, Ex. C.

21  As plaintiff has not provided a copy of the complaint she filed with DFEH, it is unclear against
whom she filed the complaint or when it was filed.  The caption of the DFEH notice that plaintiff

22  received reads, "RE: CURRY/KAISER PERMANENTE" suggesting that the DFEH complaint
was filed against TPMG only.  Additionally, the EEOC notice that plaintiff received was

23  forwarded only to "Kaiser Permanente," as evidenced by the notation on the lower left hand
corner of the notice.  Thus, it appears plaintiff filed a complaint only against TPMG, not CNA,

24  as CNA contends.  *See* CNA Reply at 3.  Plaintiff does not specifically contend otherwise.

25      [7] CNA also contends that plaintiff's duty of fair representation claim is barred for failure
to exhaust internal union remedies.  However, as explained below, because CNA is entitled to

26  summary judgment on alternative grounds, this argument need not be addressed.

1    with the EEOC and DFEH "within 180 days of the alleged unlawful act." *Id.*  She states she then

2    received a "right to [s]ue letter notice from the EEOC dated August 05, 2010 which stated

3    plaintiff must file [a] law suit within 90 days of receipt of [the] notice." *Id.*  Plaintiff contends

4    that her complaint, filed September 23, 2010, was filed within ninety days of receiving the right

5    to sue letter and is thus not barred by the statute of limitations.  *Id.*

6           Plaintiff also contends that Henke's actions during the grievance process, such as

7    Henke's refusal to present favorable evidence during meetings with TPMG and Henke's failure

8    to explain to plaintiff the negotiations between CNA and TPMG regarding plaintiff's re-testing,

9    establish that Henke breached the duty of fair representation that Henke owed to plaintiff.  *Id.* at

10   3-5.

11          Section 9(a) of the Labor Management Relations Act ("LMRA") empowers a union to act

12   as the exclusive bargaining agent of all employees in collective bargaining.  *See* 29 U.S.C.

13   § 159(a).  "The duty of fair representation is a corollary of the union's status as the exclusive

14   representative of all employees in a bargaining unit."  *Vaca v. Sipes*, 386 U.S. 171, 182 (1967).

15   It is a judicially created doctrine which requires a union "to serve the interests of all members

16   without hostility or discrimination toward any, to exercise its discretion with complete good faith

17   and honesty, and to avoid arbitrary conduct."  *Id.* at 177.  "Under the doctrine, a union must

18   represent fairly the interest of all bargaining-unit members during the negotiation,

19   administration, and enforcement of collective-bargaining agreements.  In particular, a union

20   breaches its duty when its conduct is arbitrary, discriminatory, or in bad faith. . . ."  *Int'l Bhd. of

21   Elec. Workers v. Foust*, 442 U.S. 42, 47 (1979) (citations omitted).  This federal statutory duty

22   displaces and preempts "state law that would impose duties upon unions by virtue of their status

23   as the workers' exclusive collective bargaining representative."  *Adkins v. Mireles*, 526 F.3d 531,

24   539 (9th Cir. 2008).

25          When an employee sues both the employer for unfair labor practices and the union for

26   breach of the duty of fair representation, the claim is barred if not filed within six months of the

1  alleged breach.  *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169-170 (1983) (where

2  employee alleges a union's breach of fair representation, the six-month statute of limitations set

3  forth in National Labor Relations Act barred filing of the claim); *Kalombo v. Hughes Mkt., Inc.*,

4  886 F.2d 258, 259 (9th Cir. 1989) (plaintiff's claim of breach of the duty of fair representation

5  against local union was subject to NLRA's six-month statue of limitations).  The limitations

6  period begins to run when the employee knows or has reason to know that the union has quit

7  pursuing her grievance short of arbitration.  *Stallcop v. Kaiser Found. Hosps.*, 820 F.2d 1044,

8  1049 (9th Cir. 1987) (limitations period began to run when plaintiff received union's letter

9  notifying her it would no longer pursue her grievance).

10          Here, it is clear that plaintiff knew or should have known of CNA's alleged wrongdoing

11  at least as of August 18, 2009.  On June 30, 2009, Henke informed plaintiff by e-mail and letter

12  that CNA would no longer continue to pursue plaintiff's grievance if she did not contact CNA by

13  a specified date.  Plaintiff did not respond and consequently, on August 18, 2009, CNA closed

14  plaintiff's grievance.  CNA then informed plaintiff of this action.  Plaintiff did not file a

15  complaint against CNA until September 2010, over a year after she first learned that CNA would

16  no longer pursue her grievance.  Accordingly, because plaintiff did not initiate her lawsuit within

17  six months after learning of CNA's alleged breach (*i.e.*, by February 18, 2010), her claim against

18  CNA for breach of the duty of fair representation is barred by the statute of limitations.

19          In her opposition, plaintiff argues that her complaint is not barred by the statute of

20  limitations because she filed it within ninety days of receiving a right-to-sue letter from the

21  EEOC.  Pl.'s Resp. at 2.  To the extent plaintiff is arguing that her complaint with DFEH and

22  EEOC tolls the statute of limitations on her breach of the duty of fair representation claim

23  against CNA, the argument fails.  The complaint plaintiff filed with DFEH and EEOC was

24  premised on TPMG's conduct, not CNA's.  Moreover, even if plaintiff's complaint with DFEH

25  or EEOC contained allegations against CNA, neither a DFEH nor an EEOC complaint has any

26  effect on a breach of the duty of fair representation claim and neither is a required precondition

9

1   to filing such a claim. *See* 29 U.S.C. § 160(b).

2       Nevertheless, neither equitable tolling nor equitable estoppel saves plaintiff's claim from

3   being barred by the statute of limitations.[8]  "If a reasonable plaintiff would not have known of

4   the existence of a possible claim within the limitations period, then equitable tolling will serve to

5   extend the statute of limitations for filing suit until the plaintiff can gather what information he

6   needs." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000).  However, "once a

7   claimant retains counsel, tolling ceases because [the claimant] has gained the means of

8   knowledge of [the claimant's] rights and can be charged with constructive knowledge of the

9   law's requirements." *Leorna v. U.S. Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997).  In this

10  case, plaintiff retained counsel on December 17, 2008.[9]  Therefore, as of December 17, 2008,

11  plaintiff is charged with constructive knowledge of the law's requirements regarding the statute

12  of limitations for a breach of the duty of fair representation claim and she is not entitled to

13  tolling.  Additionally, although an employee is entitled to tolling of the applicable statute of

14  limitations while pursuing grievance procedures, *see, e.g.*, *Int'l Ass'n of Machinists and*

15  *Aerospace Workers, AFL-CIO v. Aloha Airlines*, 790 F.2d 727, 738 (9th Cir. 1986), this also

16  provides plaintiff no assistance here.  Even presuming that plaintiff was pursuing the internal

17  union grievance procedures up to August 18, 2009, the date that CNA closed plaintiff's

18  grievance due to plaintiff's failure, or refusal, to maintain contact with CNA, plaintiff would be

19  entitled to equitable tolling only up to that date.  Plaintiff does not allege that she attempted to

20  continue to utilize the internal union grievance procedures after August 18, 2009.  She did not

21  initiate her lawsuit until September 2010, more than a year after she first learned of CNA's

22
23      [8] Plaintiff has neither pled nor argued that she is entitled to either equitable estoppel or
     equitable tolling of the statute of limitations. *See Stallcop*, 820 F.2d at 1050.

24      [9] CNA submitted a copy of a "Notice of Representation," dated December 17, 2008, that
25   it received from the Law Offices of Elmendorf & Windheim explaining that the firm was
     retained by plaintiff.  Henke Decl., Ex. 3.  Plaintiff signed the notice of representation, affirming
     that she had retained the law firm to represent her.  However, she mistakenly dated the letter
26   November 17, 2008.

1  alleged breach.  Therefore, equitable tolling cannot render her claim timely and it is barred by

2  the statute of limitations.

3        To invoke equitable estoppel, a plaintiff must allege facts indicative of "improper

4  purpose by the defendant, or of the defendant's actual or constructive knowledge that its conduct

5  was deceptive." *Stallcop,* 820 F.2d at 1050.  "Conduct or representations" by the defendant that

6  "tend to lull the plaintiff into a false sense of security can estop the defendant from raising the

7  statute of limitations, on the general equitable principle that no man may take advantage of his

8  own wrong." *Atkins v. Union Pac. R.R. Co.*, 685 F.2d 1146, 1149 (9th Cir. 1982) (internal

9  quotations omitted).  A plaintiff must show that the defendant engaged in "affirmative

10  misconduct." *Socop-Gonzalez v. INS*, 272 F.3d 1176, 1184 (9th Cir.  2001).  "Affirmative

11  misconduct" involves "a deliberate lie" or "a pattern of false promises." *Id.*  Here, plaintiff

12  alleges that CNA "failed by not taking the matter to arbitration"; that Henke was "negligent in

13  performing her duties by not submitting this matter into arbitration"; and that Henke refused to

14  use evidence favorable to plaintiff, FAC at 3-4, but she does not allege any facts to show that

15  CNA acted deceptively.  Her allegations of negligence simply fail to indicate  "improper purpose

16  by the defendant, or of the defendant's actual or constructive knowledge that its conduct was

17  deceptive." *Stallcop,* 820 F.2d at 1050.  Thus, plaintiff is not entitled to equitable estoppel.

18  Accordingly, her claim against CNA for breach of the duty of fair representation is barred by the

19  statute of limitations.

20        Moreover, in addition to the fact that plaintiff's claim for breach of the duty of fair

21  representation is barred by the statute of limitations, CNA is entitled to summary judgment on

22  the claim since plaintiff fails to raise a triable issue as to that claim.  CNA will only have

23  breached the duty of fair representation when its conduct toward plaintiff is "arbitrary,

24  discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190.  "A union's conduct can be classified as

25  arbitrary only when it is irrational, when it is without a rational basis or explanation." *Marquez*

26  *v. Screen Actors Guild, Inc.,* 525 U.S. 33, 46 (1998).  "To establish that the union's exercise of

1  judgment was discriminatory, a plaintiff must adduce 'substantial evidence of discrimination that

2  is intentional, severe, and unrelated to legitimate union objectives.'" *Beck v. UFCW, Local 99,*

3  506 F.3d 874, 879 (9th Cir. 2007) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach*

4  *Employees of Am. v. Lockridge*, 403 U.S. 274, 301 (1971)).  Bad faith requires "substantial

5  evidence of fraud, deceitful action or dishonest conduct."  *Id.* at 880 (quoting *Lockridge*, 403

6  U.S. at 299).  Here, plaintiff makes only conclusory allegations such as, "Henke handled the case

7  in bad faith," Pl.'s Resp. at 4, Henke's "motives" in certain statements that Henke made to

8  plaintiff were "marked by venality and dishonesty," *id.*, and  "Henke refused to provide factual

9  information that would have been favorable toward the plaintiff's case instead [she] handled the

10  case in bad faith," FAC at 4.  While plaintiff claims that CNA acted in bad faith, she has failed to

11  explain why Henke's handling of plaintiff's case constituted bad faith and has failed to proffer

12  any substantial evidence to support this assertion.  She also has not introduced any evidence

13  demonstrating that CNA's conduct or Henke's conduct was arbitrary or discriminatory.

14  Therefore, there are no genuine issues of material fact in dispute with regard to plaintiff's claim

15  that CNA breached its duty of fair representation and CNA is entitled to summary judgment on

16  that claim.

17                     2.  Negligence Claim Against CNA

18         Plaintiff also alleges that CNA labor representative Maryanne Henke "was negligent in

19  performing her duties."  FAC at 4.  Plaintiff further argues, in opposition to CNA's motion for

20  summary judgment, that CNA assumed and breached a legal duty to ensure that her grievance

21  was "properly handled and the investigation conducted in a fair, impartial and/or non-

22  discriminatory manner."  Pl.'s Resp. at 10.

23          CNA's motion for summary judgment does not address plaintiff's negligence claim

24  because CNA contends that plaintiff purported to assert a negligence claim for the first time in

25  her opposition to CNA's motion for summary judgment.  *See* CNA Reply, Dckt. No. 30, at 2-4.

26  ////

1   Although plaintiff's FAC does not clearly allege a negligence claim, to the extent that such a

2   claim is asserted, CNA is entitled to summary judgment on that claim.

3          As discussed above, a union owes its members a duty of fair representation.  The "federal

4   duty of fair representation preempts the application of state substantive law which attempts to

5   regulate conduct that falls within the union's duty to represent its members."  *Thomsen v.*

6   *Sacramento Metro. Fire Dist.,* No. 09-1108, 2009 U.S. Dist. LEXIS 97242, at *11 (E.D. Cal.

7   Oct. 19, 2009).  Indeed, "[s]tate law claims are preempted '*whenever*' a plaintiff's claims invoke

8   rights derived from a union's duty of fair representation."  *Id.* (emphasis in original); *see also*

9   *Richardson v. United Steelworks of Am.*, 864 F.2d 1162, 1168 (5th Cir. 1989) (holding that

10  because plaintiffs allege that the union breached a duty arising from its status as their exclusive

11  collective bargaining agent pursuant to the NLRA, *Vaca* requires this duty to be defined by

12  federal law).  Specifically, "[s]tate law negligence claims are preempted if the duty relied on is

13  created by a collective bargaining agreement and without existence independent of the

14  agreement."  *Ward v. Circus Circus Casinos, Inc.,* 473 F.3d 994, 999 (9th Cir. 2007).

15         Plaintiff's allegation that CNA and Maryanne Henke owe her a duty to process her

16  grievance in an impartial and fair way arises from the collective bargaining agreement.  Plaintiff

17  has not argued or referenced any legal authority to support the notion that this alleged duty is

18  independent of any right established by the collective bargaining agreement.  Accordingly,

19  plaintiff's negligence claim is preempted and subsumed by CNA's duty of fair representation.

20  Therefore, CNA is entitled to summary judgment on plaintiff's negligence claim.

21  III.    DEFENDANT TPMG'S MOTION TO DISMISS

22         Defendant TPMG moves to dismiss plaintiff's complaint pursuant to Federal Rule of

23  Civil Procedure 12(b)(6) for failure to state a claim.  Dckt. No. 12.  Plaintiff opposes the motion.

24  Dckt. No. 16.

25  ////

26  ////

A.      Motion to Dismiss Standard

To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. (quoting 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, pp. 235-236 (3d ed. 2004)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal is appropriate based either on the lack of cognizable legal theories or the lack of pleading sufficient facts to support cognizable legal theories. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, *Hospital Bldg. Co. v. Rex Hosp. Trs.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421, *reh'g denied*, 396 U.S. 869 (1969). The court will "'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985). However, the court's liberal interpretation of a pro se litigant's pleading may not supply essential elements of a claim that are not plead. *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

1    Furthermore, "[t]he court is not required to accept legal conclusions cast in the form of factual

2    allegations if those conclusions cannot reasonably be drawn from the facts alleged." *Clegg v.*

3    *Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).  Neither need the court accept

4    unreasonable inferences, or unwarranted deductions of fact.  *W. Mining Council v. Watt*, 643

5    F.2d 618, 624 (9th Cir. 1981).

6            The court may consider facts established by exhibits attached to the complaint.  *Durning*

7    *v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987).  The court may also consider facts

8    which may be judicially noticed, *Mullis v. U.S. Bankr. Ct.*, 828 F.2d at 1388, and matters of

9    public record, including pleadings, orders, and other papers filed with the court.  *Mack v. South*

10   *Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

11           A pro se litigant is entitled to notice of the deficiencies in the complaint and an

12   opportunity to amend, unless the complaint's deficiencies could not be cured by amendment.

13   *See Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

14           B.      Plaintiff's Claims Against TPMG

15           Plaintiff alleges that defendants CNA and TPMG "entered into a joint Math Policy

16   contract agreement" in which they "agreed to contractual provision[s] to place nurses who failed

17   the math test into a [r]emediation [p]rogram."  FAC at 2.  Plaintiff contends that TPMG then

18   breached this contract agreement "[b]y failing to perform in good faith to offer the plaintiff the

19   remediation program" after she failed the math test for a second time.  *Id.*  Plaintiff further

20   argues that she was "terminated without just cause" by TPMG on December 24, 2008 "for

21   allegedly not passing a [m]ath test" in violation of "paragraph 4021 of the union agreement."  *Id.*

22   at 3, 7.  Finally, plaintiff alleges that as an African-American, she was treated differently with

23   regard to the math policy.  FAC at 5.  She claims that "non African Americans" were permitted

24   to take the math test in a supervisor's office where the supervisor discussed the questions and

25   answers with the test takers.  *Id.*

26   ////

                                                    15

1     As discussed above, although plaintiff's FAC is unclear, taking into consideration the

2    liberal pleading standard afforded to pro se litigants, the FAC is construed as alleging the

3    following claims against TPMG: (1) wrongful termination in breach of the collective bargaining

4    agreement; (2) breach of the implied covenant of good faith and fair dealing; (3) wrongful

5    termination in violation of public policy; (4) breach of contract based on TPMG's math testing

6    policy for nurses; and (5) racial discrimination.

7             1.  <u>Wrongful Termination in Breach of the Collective Bargaining Agreement</u>

8     To the extent plaintiff's FAC alleges a breach of contract action against TPMG based on

9    a violation of paragraph 4021 of the collective bargaining agreement, this claim fails.  The claim

10    falls under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a),

11    which preempts state law claims that are "substantially dependent upon analysis for the terms of

12    an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471

13    U.S. 202, 220 (1985).[10]  More specifically, section 301 preempts any state law claim whose

14    resolution depends upon the meaning of a collective bargaining agreement.  *Lingle v. Norge Div.*

15    *of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988).  To determine whether a state law claim is

16    completely preempted under section 301, the relevant inquiry is whether resolution of the claim

17    requires the interpretation of a collective bargaining agreement.  *Id.* at 413.

18     Plaintiff does not challenge that her employment with TPMG was governed by the terms

19    of a collective bargaining agreement between TPMG and CNA.  Indeed, plaintiff alleges that her

20    termination was in violation of paragraph 4021 of that collective bargaining agreement.  Quite

21    obviously, whether TPMG violated paragraph 4021 requires interpretation of that specific

22    ////

23    ////

24

25        [10] Section 301 of the LMRA provides that "[s]uits for violation of contracts between an
employer and a labor organization representing employees in an industry affecting commerce . . .

26    may be brought in any district court of the United States having jurisdiction of the parties."

provision.[11]  The meaning of "just cause" must be determined by reference to the collective

bargaining agreement.  As such, plaintiff's breach of contract claim is preempted by section 301

of the LMRA.  To recover from an employer for a violation of a collective bargaining

agreement, an employee must first show that her union breached its duty of fair representation in

handling her grievance before proceeding with a section 301 suit against the employer.  *Vaca*,

386 U.S. at 186.  As noted above, plaintiff is unable to bring a claim for breach of the duty of fair

representation against the union, defendant CNA, as that claim is barred by the statute of

limitations.  Thus, plaintiff's claim against defendant TPMG for wrongful termination based on a

breach of the collective bargaining agreement must also fail.  Since this deficiency cannot be

cured by amendment, the claim must be dismissed without leave to amend.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

To the extent plaintiff alleges a breach of the implied covenant of good faith and fair

dealing, this claim is also preempted by section 301.  In California, a claim for the breach of the

implied covenant of good faith and fair dealing "is necessarily based on the existence of an

underlying contractual relationship, and the essence of the covenant is that neither party to the

contract will do anything which would deprive the other of the benefits of the contract."  *Milne*

*Employees Ass'n v. Sun Carriers*, 960 F.2d 1401, 1411 (9th Cir. 1991).  This cause of action

developed to protect at-will employees who could be fired without cause under common law.  *Id.*

The Ninth Circuit has held that because unionized employees operating under a collective

bargaining agreement have no comparable lack of job security, their claims for breach of the

implied covenant of good faith and fair dealing are preempted by section 301.  *Id.*

Here, because a collective bargaining agreement governed plaintiff's employment with

TPMG, any claim she makes for breach of the implied covenant of good faith and fair dealing is

---

[11] Paragraph 4021 of the collective bargaining agreement provides, "The Employer shall have the right to discharge or assess disciplinary action for just cause."  Henke Decl., Ex. 1 at 112.

1  preempted by section 301 and should be recharacterized as a section 301 claim.  *See also Smith*

2  *v. Pac. Bell Telephone Co.,* 2007 WL 1114044, at *7 (E.D. Cal. Apr. 13, 2007) (holding that

3  claim for breach of the implied covenant of good faith and fair dealing is preempted by section

4  301).  Plaintiffs have six months after their cause of action accrues to file a section 301 claim

5  against an employer.  *DelCostello*, 462 U.S. at 171-72.  As explained above, plaintiff must first

6  show a breach of the duty of fair representation by the union in order to proceed with a section

7  301 claim and, in this case, plaintiff's duty of fair representation claim is time-barred.

8  Accordingly, her claim for breach of the implied covenant of good faith and fair dealing must be

9  dismissed as time-barred as well, without leave to amend.

10                    3.  Wrongful Termination in Violation of Public Policy

11          To the extent plaintiff alleges that she was wrongfully terminated in violation of public

12  policy, this claim also fails.  Under California law, an employee may maintain a cause of action

13  against her employer where the employer's discharge of the employee contravenes fundamental

14  public policy.  *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 666 (1988).  To sustain a

15  wrongful termination claim in violation of public policy, plaintiff must establish that the

16  dismissal violated a policy that is: (1) fundamental; (2) beneficial for the public; and (3)

17  embodied in a statute or constitutional provision.  *Wynes v. Kaiser Permanente Hosps.*, 2011 WL

18  1302916, at *9 (E.D. Cal. Mar. 31, 2011) (citing *Colores v. Bd. of Trustees*, 105 Cal. App. 4th

19  1293, 1307 (2003)).

20          Here, plaintiff alleges in her FAC that while she was required to take the math test alone

21  in a conference room, two other nurses, both of whom were not African-American, were invited

22  into a supervisor's office to take the math test with the supervisor's assistance.  FAC at 5.

23  Plaintiff also states that TPMG's "actions in firing her were illegal and discriminatory in nature

24  and that Kaiser Permanente Math policy practices are not in compliance with the [g]overnment

25  code statutes."  *Id.* at 8.  Finally, plaintiff contends she was "being targeted" by TPMG.  *Id.* at 9.

26  ////

1    Plaintiff's FAC is vague because it does not identify any express statutes or public policy

2    to support a claim for wrongful termination in violation of public policy.  Nor is it clear whether

3    she intends the claim to arise under the collective bargaining agreement or as a statutory

4    discrimination claim.  Thus, it is recommended that plaintiff's claim be dismissed with leave to

5    amend for further clarification.

6                        4.  Breach of the Medication Math Testing Policy

7    Plaintiff also appears to allege that she and TPMG are parties to a contract – the math

8    policy – and that TPMG violated this contract by, among other things, failing to offer plaintiff a

9    remediation program when she failed the math test.  This argument also fails.

10    In *Olguin v. Inspiration Consol. Copper Co.*, an employee whose employment was

11    governed by a collective bargaining agreement asserted a breach of contract claim based on an

12    employee manual.  740 F.2d 1468, 1474 (9th Cir. 1984).  The Ninth Circuit held that this claim

13    was "clearly preempted" by section 301 because "[t]o the extent that the alleged policy manual

14    [was] inconsistent with the provisions of the collection bargaining agreement, the bargaining

15    agreement control[led]."  *Id.*  The employee also asserted a claim for wrongful discharge in

16    violation of "an agreement of employment"; however it was unclear to the court whether the

17    agreement the employee referred to was the collective bargaining agreement or the employee

18    manual.  *Id.*  The Ninth Circuit thus stated in regard to this claim, "Like the personnel policy

19    manual, any independent agreement of employment could be effective only as part of the

20    collective bargaining agreement" and held this claim preempted as well.  *Id.*  Since *Olguin* was

21    issued, it has often been cited for the proposition that any independent agreement of employment

22    concerning a job position covered by the collective bargaining agreement could be effective only

23    as part of the collective bargaining agreement.  *See Aguilera v. Pirelli Armstrong Tire Corp.,* 223

24    F.3d 1010, 1015 (9th Cir. 2000) (quoting *Olguin* in holding that where the position in dispute is

25    covered by a collective bargaining agreement, the collective bargaining agreement controls and

26    any claims seeking to enforce the terms of a separate agreement are preempted); *Beals v. Kiewit*

19

*Pac. Co.*, 114 F.3d 892, 894 (9th Cir. 1997) (quoting *Olguin* in holding that any claims to

enforce an independent agreement are preempted); *Young v. Anthony's Fish Grottos*, 830 F.2d

993, 997 (9th Cir. 1987) (quoting *Olguin* in holding that alleged oral contract between employee

and employer regarding reinstatement was controlled by collective bargaining agreement since

employee held position covered by collective bargaining agreement); *Stallcop,* 820 F.2d at 1048

(quoting *Olguin* in holding that oral agreement made in connection with employee's

reinstatement should be treated as a collective bargaining agreement for preemption purposes

because the independent agreement could only be effective as part of larger collective bargaining

agreement).

      Based on these authorities, it would appear that this case presents a clear case for

preemption.  However, "[i]n reality, section 301 has been the precipitate of a series of often

contradictory decisions, so much so that 'federal preemption of state labor law has been one of

the most confused areas of federal court litigation.'"  *Galves v. Kuhn*, 933 F.2d 773, 776 (9th Cir.

1991) (citation omitted); *see also Todd v. Safeway, Inc.,* 1998 WL 556577, at *3 (N.D. Cal. Aug.

28, 1998) (recognizing the confusion among courts with regard to state law claims and section

301 preemption); *Walton v. UTV of San Francisco, Inc.*, 776 F. Supp. 1399, 1402 (N.D. Cal.

1991) (explaining that several Ninth Circuit cases rely on the *Olquin* quote out of context).

      In this case, plaintiff does not dispute that she is a member of CNA and that CNA entered

into a collective bargaining agreement with TPMG on her behalf, which governs the terms of

employment.  She also does not dispute that the collective bargaining agreement sets out a

grievance procedure and only allows for termination of employees for "just cause."  Henke

Decl., Ex. 1 at 108-10, 112.  However, plaintiff argues that her termination was in violation of

the math policy, which she claims was the basis of a separate contract between TPMG and

herself.  Although plaintiff articulates her claims as a breach of contract on the basis of the math

policy, as well as a wrongful termination in violation of the collective bargaining agreement, the

underlying harm that she complains of is the termination of her employment.  But, the collective

1   bargaining agreement "established the grievance and arbitration procedure to resolve disputes

2   over employee terminations" and to the extent that the math policy and the collective bargaining

3   agreement are inconsistent, the collective bargaining agreement controls. *Civardi v. General*

4   *Dynamics Corp.,* 603 F. Supp.2d 393, 398 (D. Conn. 2009). Thus, whether the claim is

5   articulated as a breach of the math policy or a breach of the collective bargaining agreement, the

6   "just cause" standard from the collective bargaining agreement controls. And, in order to

7   determine whether TPMG had "just cause" to terminate plaintiff, the undersigned would be

8   required to interpret the "just cause" paragraph. Therefore, this claim is preempted by section

9   301 and should be recharacterized as a section 301 claim. *See id.* (treating a breach of contract

10  claim based on an employee handbook as a claim for breach of the collective bargaining

11  agreement, which included a "just cause" standard and finding the claim preempted by section

12  301); *see also Price v. Georgia-Pacific Corp.,* 99 F. Supp. 2d 1162, 1166-68 (N.D. Cal. 2000)

13  (claim by plaintiff with access to the collective bargaining agreement grievance procedure is

14  preempted by section 301); *Todd*, 1998 WL 556577, at *3 (claims essentially seeking remedies

15  for breach of a plaintiff's collective bargaining agreement which prevents discharge except for

16  good cause shown is preempted by section 301). As explained above, because plaintiff is time-

17  barred from bringing a breach of the duty of fair representation claim, a requisite for a section

18  301 claim, her section 301 claim is also time-barred. Accordingly, plaintiff's claim for breach of

19  the math policy must be dismissed without leave to amend.

20              5. Racial Discrimination Claim

21          Finally, as noted above regarding plaintiff's wrongful termination/public policy claim, it

22  appears that plaintiff's FAC attempts to articulate an employment discrimination claim based on

23  race, by alleging that "non[-]African[-]Americans" were permitted to take the math test in a

24  supervisor's office with the supervisor's assistance, while plaintiff, an African-American, was

25  required to take the test in a conference room without assistance. FAC at 5. However, plaintiff's

26  FAC does not identify the legal theories pursuant to which she intends to proceed on her racial

discrimination claim and does not contain factual allegations sufficient to raise a right to relief on any such theories beyond the speculative level.  If plaintiff intends to pursue a claim for racial discrimination, she should identify what legal theories she wishes to utilize and allege specific facts sufficient to state a claim for relief under those theories.  Since it is not clear that such amendments would be futile, plaintiff's racial discrimination claim should be dismissed with leave to amend.[12]

C.    Leave to Amend

If plaintiff elects to file a second amended complaint against TPMG as authorized herein, the complaint shall not add other claims not authorized by the court or new defendants and shall not include any claims that were dismissed herein without leave to amend.  Plaintiff is reminded that the court cannot refer to a prior pleading in order to make her second amended complaint complete.  Local Rule 220 requires that an amended complaint be complete in itself without reference to any prior pleading.  This is because, as a general rule, an amended complaint supersedes the original complaint.  *See Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967).  Once plaintiff files a second amended complaint, the FAC no longer serves any function in this case. Failure to file a second amended complaint will result in a recommendation that this action be dismissed.

IV.    CONCLUSION

Accordingly, it is hereby ORDERED that:

1. The Status Conference currently set for July 20, 2011 is CONTINUED to October 12, 2011 at 10:00 a.m. in Courtroom No. 24.

2. The parties shall file status reports not later than September 28, 2011.

////

////

---

[12] As plaintiff's claims against TPMG are dismissed, TPMG's motion for a more definite statement is denied as moot.

Further, it is RECOMMENDED that:

1. Defendant CNA's motion for summary judgment, Dckt. No. 28, be granted;

2. Defendant TPMG's motion to dismiss, Dckt. No. 12, be granted;

3. Plaintiff's claims against TPMG for wrongful termination in breach of the collective bargaining agreement, breach of the implied covenant of good faith and fair dealing, and breach of contract based on TPMG's math policy be dismissed without leave to amend;

4. Plaintiff's claims against TPMG for wrongful termination in violation of public policy and racial discrimination be dismissed with leave to amend;

5. Defendant TPMG's motion for a more definite statement, Dckt. No. 12, be denied;

6. Plaintiff be provided fourteen days from the date any order adopting these findings and recommendations is filed to file a second amended complaint as provided herein; and

7. Plaintiff be admonished that failure to timely file an second amended complaint will result in a recommendation that this action be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 6, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE